David A. Hill, Jr., Ford & Paulekas, LLP
280 Trumbull Street, Hartford, CT  06103 (860) 527-0400 dh5561

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

NEW ENGLAND STONE, LLC,

                                    Plaintiff,

v.

GEORGE A. FULLER CO., INC., LC MAIN,
LLC, and SAFECO INSURANCE
COMPANY OF AMERICA

CIVIL ACTION NO.

# 08 CIV. 7282

AUGUST 12, 2008

JUDGE ROBINSON

## COMPLAINT

Now comes the Plaintiff, New England Stone, LLC (the "Plaintiff"), by and through its

counsel, David A. Hill, Jr., of Ford & Paulekas, LLP, and hereby respectfully brings the

following complaint:

### Parties

1.      The Plaintiff, New England Stone, LLC (the "Plaintiff"), is a limited liability

company organized and existing under the laws of the State of Delaware, with a principal place

of business at 285 Smith Street, North Kingstown, Rhode Island.

2.      The Defendant, George A. Fuller Co., Inc. ("Defendant Fuller"), is a corporation

organized and existing under the laws of the State of New York, with a principal place of

business at 115 Stevens Avenue, Valhalla, New York.

3.      The Defendant, Safeco Insurance Company of America ("Defendant Safeco"), is

a corporation organized and existing under the laws of the State of Washington, with a principal

place of business of 1200 Macarthur Boulevard, Mahwah, New Jersey.

**Contract**

GEORGE A. FULLER COMPANY, INC.
115 Stevens Avenue
Valhalla, New York 10595
Phone: (914) 773-7700  Fax: (914) 769-5030

April 30, 2007

New England Stone, LLC
285 Smith Street
North Kingstown, RI 02852

**Contract No. S6040022**
Project No. 00-0024-004

Cost Code 02-750

Attention: Michael Myers, Estimating Manager

Phone: (401) 294-1200    Fax: (401) 294-1220

RE:   **Renaissance Square-South Tower A & Hotel,** (as hereinafter defined) (the "Project");
located at 221 Main Street, White Plains, New York 10601, (the "Site"). The Project is
being constructed by the Construction Manager for and under a Contract with LC Main
LLC, having an office at 115 Stevens Avenue, Valhalla, New York 10595 (the "Owner").

To Whom It May Concern:

Confirming arrangements made with your representative, you (the "Seller") hereby agree to
furnish and deliver the following materials, fixtures and equipment (hereinafter "Materials") for
the above Project, in accordance with the terms and provisions hereof and of Rider No. 1-A,
Rider No. 1, and all exhibits attached hereto and made a part hereof and the Contract
Documents prepared by Architects, The Costas Kondylis & Partners (the "Architect") for the
sum of Three Hundred Fifty Thousand & no/100 **$350,000.00** Dollars (the "Contract Price"),
which sum includes sales taxes where applicable, duty paid, FOB the Project Site, as required
by the general progress of the construction and as directed by George A. Fuller Company, Inc.
(the "Construction Manager"), which is authorized to act on behalf of and as Construction
Manager under an agreement with ( the "Owner") in connection with this order (hereinafter
referred to as the "Order" or "Agreement").

*AND MAT'L QUANTITES AS*
*PREPARED BY GEORGE A FULLER G.*

General Description of Materials -- Furnish and Deliver **Exterior Site Granite Pavers**,
as follows:
- 20,325 Dakota Mahogany, SF: 18"x18"x2" Scored in 6"x6"x1/2" th. False-joint @
$15.50 ($315,038.00)
- 3,135 Deer Isle, SF: 18"x18"x2" w/9"x9"x1/2"th. False-joint Scoring @ $11.15
($34,962.00)
as further described in attached Exhibit "A"-Drawing, (1-page).
- Drawing list to be delivered under separate cover.

*5/8/07*
*IK \**

Additional Conditions:

*2 WEEKS AFTER RECEIPT OF APPROVED SHOP TICKETS, FULLY EXECUTED CONTRACT & REQ. DEPOSIT* (MM)

1. Delivery of 1st Load Material by no later than ~~Monday May 28, 2007~~
2. Balance of order, periodic to keep pace w/progress/installation, but complete material order by no later than ~~July 26, 2007~~ w/knowledge that complete material order includes both South Tower A Hotel & North Tower B.
3. Deer Isle Material to be false-jointed in same % as w/Trump Tower South, City-Center, White Plains. *5/8/07 IK \**
4. Excludes Installation

*8 WEEKS AFTER DELIVERY OF FIRST SHIPMENT OF MATERIALS.* (MM)

It is hereby further agreed as follows:

Materials manufactured and deliveries made under this Order shall be made by workmen which will work in harmony with other tradesmen working on the Project.

All materials are subject to the approval of the Construction Manager, the Architect and the Owner.

Payments Terms: **Deposit**: *1/3 deposit ($116,667.00) upon submission and approval of cut-sheets, shop-drawings and material bill-of-sale.*
**Progress Payments**: *Within seven (7) business days of delivery and receipt of material.*

Seller shall provide final Waiver of Lien document prior to receipt of final payment.

Seller's warranty under Paragraph 3 of Rider No. 1-A shall continue for a period of one year after final acceptance of all materials or such longer period as may be otherwise set forth in any of the documents referenced therein.

Kindly signify your acceptance hereof and agreement herewith by signing both copies (blue and white) of this Agreement in the place indicated below and return to the attention of *Ramona Lewis, Contract Administrator.* Upon receipt an executed copy will be returned to you for your file.

Very truly yours,
George A. Fuller Company, Inc.
CONSTRUCTION MANAGER

By: _____
Ramona Lewis – Contract Administrator

New England Stone, LLC
AGREED AND ACCEPTED BY SELLER

By: _____ 5/8/07
Michael Myers, Estimating Manager - Date

George A. Fuller Company, Inc.
AGREED AND ACCEPTED BY PURCHASER

By: _____
Louis R. Cappelli, President – Date

Attachments:  – Rider No. 1A
– Rider No. 1 (Additional Insureds)
– Exhibit "A" – Drawing, 1 page

F:\BonnieR\221 MAIN STREET CONTRACTS\South Tower.221 Main.S604\New England Stone.S6040022furnish only.rtf

## RIDER NO. 1-A

1.  Seller agrees that the articles and merchandise to be furnished hereunder will not infringe any valid patent or trademark, that Seller will, at its own expense, defend any and all actions or suits charging such infringement, and that Seller will defend and indemnify the Owner, Construction Manager and the other Indemnitees (hereunder defined), against and save them harmless from, any loss, liability or damage in case of any such infringement or claim of infringement. The term "Indemnitees" as used herein shall mean the Owner, the Construction Manager, the Architect, the Lender, each of the persons and entities listed on Rider No. 1 annexed to this Agreement and made a part hereof, Owner's Representative and the respective partners, directors, officers, agents, members, shareholders, servants and employees, disclosed or undisclosed, individually or collectively, of the foregoing.

2.  It is agreed that time is of the essence of this order, and if delivery is not effected within the ~~time specified in Rider No. 2~~, Construction Manager reserves the right in addition to all of its other rights and remedies at law or in equity to cancel this order and to hold Seller liable for damages sustained by Construction Manager, Owner or Lender as a result of Seller's failure in this respect. In the event that Construction Manager does not cancel this order, Owner shall in any event be entitled to all remedies at law including for all damages, costs and losses arising out of any such delay. If the occurrence of any event or cause which would constitute an excuse in law for a delayed delivery or non-delivery is to be relied on by Seller, it is agreed, as a condition of such reliance, that Seller notify Construction Manager in writing thereof within three (3) days after such occurrence, and in such case Construction Manager may cancel this order at our option, either retain partial shipments theretofore made and accepted by us as satisfactory at the contract price thereof, or return the same at Seller's expense, and may also at our option, request the delivery of articles or merchandise partially processed pursuant to this order, at the cost thereof to Seller in accordance with GAAP, in their existing state, and/or the delivery of such articles or merchandise which have been completely manufactured by Seller at the contract price. We reserve to ourselves the right, at any time before shipment, to postpone delivery dates for a reasonable time.

    *(handwritten margin notes: ** 5/8/07 TIME AGREED UPON, (MM))*

    *(handwritten margin note right: (MM))*

    *(handwritten note: 5/8/07 **)*

    *(handwritten note across page: IN EXCESS OF SIXTY (60) DAYS INVOICE FOR STORED MATL TO BE APPROVED)*

3.  Seller warrants that all articles and merchandise sold hereunder will strictly conform to the specifications, drawings, samples or other descriptions furnished or received by Seller and in all respects will be of good and new material and workmanship and free from defects and that the same shall be fit for the purpose and use intended. All articles and merchandise hereunder shall be subject to inspection and tests by Construction Manager, the Architect and Engineers, Owner and Lender. Rejected articles may be returned at Seller's risk and expense. Failure to reject shall not release Seller of any of its responsibilities or warranties hereunder. Construction Manager, Owner, Lender, the Architect and Engineers reserve the right to inspect any such articles and merchandise (including materials or equipment made to special specifications) at any state in the process of manufacture, but any such inspection or any approval, shall be provisional only and shall not constitute final acceptance nor shall it be construed as a waiver of any rights Construction Manager, Owner, Lender, the Architect and/or Engineers may have after receipt thereof at specified designation. Rejection and return of any portion of shipment which may be defective or which fails to comply with specifications may be made without invalidating the remainder of this order, at Owner's election.

4.  We reserve the right, prior to the delivery of the articles and merchandise herein ordered, to make changes in quantities and/or specifications relating to such articles and merchandise, and in such event, any variations in the cost of furnishing the articles and merchandise specified shall be equitably reflected in adjustment of price. Should the need arise for new quantities or change of specs to be specified appropriate time needs to be included.

5.    Transportation must be prepaid by Seller on all shipments to which a delivered price applies.

Except as shall be expressly provided for in writing duly signed by us, we will not accept charges for packing, packaging, or transportation, including C.O.D. shipments.

Seller shall insure at full value all shipments by Parcel Post, express or commercial steamship lines. The articles and merchandise to be furnished hereunder shall be at Seller's risk until actual delivery to and acceptance by us or our designee at such place or destination as may be specified in this order or may be specified by us in writing at a later date.

6.    Seller agrees that no part of this order shall be subcontracted without our prior written approval and that the articles and merchandise to furnished hereunder must be furnished only by the person or firm to whom this order is addressed. In furtherance of the foregoing, Seller shall not assign this Agreement or the performance of any of its obligations hereunder without the prior written consent of Construction Manager and Owner, which consent may be given or withheld in Construction Manager's and Owner's sole discretion.

7.    Seller agrees to comply with and warrants that all articles and merchandise covered hereby and labor employed in the manufacturing, processing, handling and delivery thereof shall be subject to all applicable laws, regulations and ordinances of the United States of America, or any state, or municipality, or governmental authority or agency in respect of the manufacture, procurement or sale of any goods to be supplied pursuant to this order, more particularly, and without limiting the generality hereof, the Fair Labor Standards Act, Public Contracts Act, Buy America Act, and Davis-Bacon Act, to the extent applicable.

8.    In the event of any strike, fire, accident or other cause beyond our control which shall affect our ability to receive and/or use the articles and merchandise herein ordered, we shall have the right, upon written notification to Seller by telegram or letter and without penalty to us, to order a delay in scheduling shipment of articles and merchandise to us (including, without limitation, the Materials).

9.    In case of entry by the Seller, or any of the Seller's agents or employees, upon our property or property upon which we are engaged in construction, alteration or other work of any kind, nature or description, for the purpose of making delivery of articles and merchandise covered by this order, or for the purpose of making inspection thereof, or inspection of the site itself, the Seller agrees to provide all necessary and sufficient safeguards and to take all proper precautions, against the occurrence of accidents, injuries or damages to any persons or property and to be responsible for and to indemnify and save us and the other Indemnitees, harmless from all loss or damage and any or all claims arising by reason of accidents, injuries, or damage to any person or property in connection with such work at such location(s) or site(s) except such as may be the direct result of negligence on our part or the part of the other Indemnitees, and from all fines, penalties or losses incurred by reason of the violation of any law, regulation, or ordinance, and Seller further agrees to defend at the Seller's expense, any and all suits or actions civil or criminal arising out of such claims or matters and further agrees to procure and carry such insurance of employees as may be required by any Workmen's Compensation Act or other law, regulation, or ordinance, which may apply at the premises.

10.    Should any person or persons at any time assert a claim or institute any action, suit or proceeding against us , the Owner or any of the other Indemnities involving the manner or sufficiency of the performance of the work comprehended by this agreement, including any of the documents referred to herein, the Seller will, upon our or Owner's request, promptly take over the defense of any such claim, action, suit or proceeding at the sole cost and expense of the Seller and will also indemnify us, and the other Indemnitees, and save us, and the other Indemnitees, harmless

from and against any and all liability, damages, judgments, costs and expenses (including attorney's fees) arising out of or in connection with any such claim, action, suit or proceeding.

11.  The waiver or acceptance by us or any other person or entity of any breach on Seller's part of any of the terms of this order shall not relieve Seller of responsibility hereunder for any prior or subsequent breach.

12.  Should the Seller be adjudged bankrupt or make a general assignment for the benefit of creditors, or should a petition under any bankruptcy, insolvency or other similar law now or hereafter in effect, to be filed by or against the Seller, or should a receiver be appointed on account of the Seller's insolvency, or should the Seller fail in any respect to furnish articles and merchandise hereunder with promptness and diligence, we may, after three (3) days written notice to the Seller, terminate this agreement and make other arrangements for the procurement of such articles and merchandise, or any part thereof, and deduct the cost thereof from any money due or thereafter to become due to the Seller. In the event of such termination, Seller shall not be entitled to receive any future payment under this agreement until all of the articles and merchandise to be furnished under this agreement have been obtained by us, at which time, if the unpaid balance of the amount to be paid under this Agreement shall exceed the expense incurred by us in obtaining such articles and merchandise, such excess shall be paid by us to the Seller, but if such expense shall exceed such unpaid balance, the Seller shall pay the difference to us.

13.  This Agreement is confidential between us and the Seller, and it is agreed by the Seller that none of the details of this Agreement or this transaction shall be published or disclosed without our prior written permission. Any violation of this condition shall be deemed a material breach of contract.

14.  It is agreed that the provisions herein are in addition to, and not in limitation of, all and whatever rights, not herein specifically dealt with, as are conferred upon us by law.

15.  As used herein, the following terms have the following meanings:

   a.  "We", "us" (and words of similar import) shall mean the Construction Manager.

   b.  "Agreement" shall mean this Letter Agreement between Construction Manager and Seller, as the same may be modified or amended.

   c.  "Final Completion" shall mean when all work or materials delivered and accepted by Construction Manager, Owner, Architect and Lender complies in all respects with the Contract Documents, Plans and Specifications and Governmental requirements (to the best efforts within the custody and care of Construction Manager).

16.  No payment shall be due and payable to Seller unless and until Seller shall have executed and delivered to Owner or Construction Manager a waiver of lien in form satisfactory to Owner, upon payment Construction Manager and the Lender in respect of the materials covered by such payment, together with such affidavits and other documents as Owner, Construction Manager or the Lender may reasonably require.



17.   The Owner, or its Architect or Construction Manager may decline to approve requisitions in whole or in part because of subsequently discovered evidence or subsequent observations, or may nullify the whole or any part of any requisition previously issued, to the extent as may be necessary in and upon to protect the Owner from loss because of:

    a.   defective materials not remedied;

    b.   third party claims filed or reasonable evidence indicating probable filing of such claims;

    c.   failure of Seller to make payments properly to its supplier or for labor, materials or equipment supplied to it;

    d.   reasonable evidence that the materials cannot be delivered in full for the unpaid balance of the contract price herein stipulated;

    e.   damage to the Owner or another contractor or subcontractor;

    f.   reasonable evidence that the materials will not be supplied within the time stipulated herein; or

    g.   persistent failure to carry out obligations hereunder in accordance with the terms hereof.

18.   This Agreement may be collaterally assigned to the Lender. In the event of termination of the Construction Manager Agreement between the Owner and Construction Manager, then this agreement, at the option and direction of the Owner, shall automatically be (a) assigned to Owner or to whoever Owner may direct, and Seller shall continue to perform its services under this Agreement without interruption or (b) terminated to the extent directed by Owner.

19.   This Agreement shall be governed by and construed under the laws of the State of New York.

20.   Immediately upon Seller's delivery of the Materials to the Site, such Materials shall become the sole property of the Owner, notwithstanding that such Materials have not been incorporated in, or made a part of, the Project at the time of such delivery.

21.   No action or proceeding shall be maintained by Seller against Construction Manager, Owner or the Architect upon any claim arising out of or based upon this Agreement or by reason of any act or omission or omission or any requirements relating to the giving of notices or information, unless such action or proceeding shall be commenced within one (1) year after delivery of the Materials to the Site, or, if this Agreement is terminated earlier, within one (1) year following the date of such termination. This Section shall not be deemed or construed to modify any other provision hereof relating to waivers of claims by Seller or to extend any period herein specifically provided for the initiation of an action relating hereto. Seller shall include the requirements of this Section in all subcontracts of any tier with respect to the subject matter of this Agreement.

22.   Seller hereby represents and warrants to the Construction Manager and the Owner that (a) title to all Materials incorporated in or delivered to the Project or paid for by the Owner shall pass to the Owner free and clear of all liens, claims, security interests and encumbrances of every kind, and (b) no materials or equipment covered by any requisition for payment from Seller will have been acquired by any other person subject to an agreement under which an interest therein or an encumbrance thereon shall have been retained by any third party or otherwise imposed by any other person.



23. All Materials shall be delivered by Seller at the Site or at such off-Site storage locations as shall have been approved in writing in each instance by Construction Manager. Seller shall cooperate with Construction Manager in locating such storage locations. Seller shall make such arrangements as Construction Manager shall deem necessary for (i) access to the Materials for the purpose of inspection and removal of the same, (ii) passing and protecting Owner's title to the Materials, free and clear of all liens, encumbrances and rights of others, (iii) obtaining any relevant documentation concerning the Materials which Construction Manager may require, and (iv) verifying that the Materials will be fully insured and adequately protected while being stored off-Site. Any Materials stored at off-Site storage locations shall be segregated from materials and equipment of others, shall be clearly labeled to evidence Owner's ownership interest and shall otherwise be stored in such manner as directed by Construction Manager.

24. Seller shall cooperate and shall cause its sub-Sellers to cooperate, with any financial institution or Governmental Agencies providing construction or permanent financing for the Project (herein collectively called the "Lender" or "Grantor"). Without limiting the generality of the foregoing, Seller shall supply or cause to be supplied all information and documentation requested by Construction Manager or Owner to comply with the requirements of Lender or Grantor in the form, if any, required by Lender or Grantor. Upon Construction Manager's or Owner's request, Seller shall execute and deliver an amendment to this Contract to reflect Seller's obligations with respect to the construction or permanent financing after such financing has been arranged, including Seller's Agreement to perform its obligations hereunder for benefit of Lender or Grantor if Construction Manager defaults under the construction loan or under the Capital Grant.

25. All notices hereunder shall be in writing and shall be personally delivered or sent by registered or certified mail, postage prepaid, or sent by nationally recognized overnight courier service, as follows:

      To the Construction Manager:

      George A. Fuller Company, Inc.
      115 Stevens Avenue
      Valhalla, New York 10595
      Attn: Paul Slaney, Esq.

    To the Seller:

      At the address set forth on page 1 of this Agreement

or to such other address as may be designated in writing by either party to the other in accordance with the provisions of this Paragraph 24. All notices shall be deemed to have been given when sent, except that notice of change of address shall be deemed to have been given when received.

Agreed:                                    Agreed:
George A. Fuller Company, Inc.             Seller: New England Stone, LLC

BY: _____              BY: _____ 5/8/07
Louis R. Cappelli, President    Date       Michael Myers, Estimating Manager- Date

# RIDER NO. 1
## INDEMNITY AND HOLD HARMLESS PROVISIONS

To the fullest extent permitted by law, the Contractor and/or Vendor/Installer shall indemnify, hold harmless and defend George A. Fuller Company, Inc. (Construction Manager) and Owner and all of its agents and employees and additional insured listed below from and against all claims, damages, losses and expenses including but not limited to attorneys' fees arising out of or resulting from the performance of the Agreement, provided that any such claims, damage, loss or expense (a) is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property, including loss of use resulting therefore, and (b) is caused in whole or in part by any act or omission of Contractor and/or Vendor/Installer or anyone directly or indirectly employed by it or anyone for whose act it may be liable, regardless of whether it is caused in part by the negligent act or omission of George A. Fuller Company, Inc. (Construction Manager) and Owner or any of its agents and employees. Not withstanding the foregoing, Contractor and/or Vendor/Installer's obligation to indemnify George A. Fuller Company, Inc. (Construction Manager) and Owner or any of its agents and employees for any judgment, decree, indication or arbitration award or settlement shall extend only to the percentage of negligence of Contractor and/or Vendor/Installer, anyone directly or indirectly employed by anyone for whose acts they may be liable in contributing to such claim, damages, loss and expenses in any and all claims against George A. Fuller Company, Inc. (Construction Manager) and Owner or any of its agents or employees, by any employee of Contractor and/or Vendor/Installer, the indemnification obligation under this paragraph shall not be limited by any limitation on the amount or type of damages, compensation or benefits payable by or for Contractor and/or Vendor/Installer under Workers Compensation acts or other employee benefits.

<u>NOTE:</u>

Wherever the term "Owner" appears in the Contract, in connection with the Hold Harmless and/or Insurance provisions of the Contract, it shall be deemed to include: George A. Fuller Company Inc; G.A. Fuller Construction Management LLC; George A. Fuller Construction Management, Inc; Fuller Development Company, Inc; Cappelli Enterprises, Inc; LC Main, LLC; Harvey Kaufman, Architect P.C.; The Union Labor Life Insurance Company as construction loan administrative agent for the lender, including their successors and assigns; Bank of Scotland, New York Branch; CIBC, Inc., ISAOA; Union State Bank; 55 Church WP, LLC c/o Minskoff Grant Realty & Management Corp; 199 Main Street Realty Corp; The City of White Plains; Grace Church; Renaissance Residential Partners II, LLC; Renaissance Hotel Partners, LLC; Ritz Carlton Hotel Company, LLC; Marriott International, Inc.



# INSURANCE REQUIREMENTS

Before commencing the Work, the Contractor and/or Vendor/Installer shall procure and maintain, at its own expense, until final acceptance of the Work and throughout the term of the warranty of the Work, at least the following insurances in the amounts specified, from insurance companies satisfactory to George A. Fuller Company, Inc. (Construction Manager):

1.  **Workers Compensation**                          Statutory Coverage

2.  **Commercial Liability, & "XCU"**
    | | |
    |---|---|
    | $1,000,000 | General Aggregate |
    | $1,000,000 | Products/Completed Operations Aggregate |
    | $1,000,000 | Personal & Advertising Injury |
    | $1,000,000 | Each Occurrence |
    | $    50,000 | Fire Damage |
    | $     5,000 | Medical Expense |
    - A per project aggregate endorsement must be endorsed to the policy.

3.  **Automobile Liability**
    $1,000,000          Combined Single Limit

4.  **Excess Liability**
    $5,000,000          Each Occurrence
    $5,000,000          Aggregate
    - A per project aggregate endorsement must be endorsed to the policy.

**WORK SHALL NOT BEGIN UNTIL THE APPROPRIATE INSURANCE CERTIFICATES ARE DELIVERED TO George A. Fuller Company, Inc. (Construction Manager).** Policies to be provided with 10-day cancellation notice to George A. Fuller Company, Inc, (Construction Manager).





Exhibit "A" to Contract S60400022
New England Stone, LLC

CIP Exhibit "C"

1.1     Overview. The "Construction Manager" has arranged for the Project to be insured under a Contractor Controlled Insurance Program ("CIP"). The CIP is more fully described in the "CIP Manual". The "Construction Manager" has designated Tanenbaum-Harber Co., Inc. as the "CIP Administrator."

Parties performing labor or services at the Jobsite, unless an excluded party ("Excluded Parties") as defined below in 1.3 are "Eligible Parties." All "Eligible Parties" shall enroll in the CIP. The CIP will provide to Enrolled Contractors ("Enrolled Contractors"), as defined below, workers compensation and employers liability insurance, commercial general liability insurance, umbrella liability insurance, as summarily described below, ("CIP Coverages") in connection with performance of the work at the Jobsite. Coverage for off-site activities is not provided by the CIP Coverages. The CIP does not include commercial automobile liability or physical damage insurance, contractors' equipment insurance, professional liability insurance, environmental liability insurance or other lines of insurance not specifically enumerated as being included.

1.2     Enrolled Contractors and Their Insurance Obligations. CIP Coverages shall cover Enrolled Contractors. Enrolled Contractors are Eligible Parties, and such other persons or entities as Construction Manager in its sole discretion may designate, who have been enrolled in the CIP as evidenced by a confirmation letter and certificate of insurance issued by the CIP Administrator.

Each such party who is insured under the CIP is collectively referred to as an "Enrolled Contractor." Enrolled Contractors shall obtain and maintain, and shall require each of their Subcontractors of Any Tier to obtain and maintain the insurance coverage not provided by the CIP specified in 1.9 below, the CIP Manual, and other Contract Documents as applicable.

1.3     Excluded Parties and Their Insurance Obligations. "Excluded Parties" are those Subcontractors of Any Tier who are not eligible for enrollment as provided below. CIP insurance does not cover the following "Excluded Parties":

- Entities who perform hazardous materials remediation, removal, and/or transport and their consultants;
- Architects, surveyors, engineers, and soil testing engineers, and their consultants;
- Any person and/or organization that fabricates and/or manufactures products, materials and/or supplies away from the Jobsite. The Construction Manager in its sole discretion may designate a fabricator or supplier as an Eligible Party in the event that its erection or installation Sub-Subcontractors or other Sub-Subcontractor(s) shall generate payroll on the Jobsite;
- Vendors, suppliers, fabricators, material dealers, truckers, haulers, owner/operators (independent Owners), drivers, and others whose



CIP Exhibit "C"

operation(s) and/or employee(s) is/are engaged solely in the loading, hauling and/or unloading of material, supplies, and/or equipment to or from the Jobsite;

- Subcontractors and each of their respective Sub-Subcontractors who do not perform any actual labor on the Jobsite;
- Any other parties whom the Construction Manager at its sole discretion, or through CIP Administrator, elects to exclude from the CIP, even if otherwise eligible.

Excluded Parties and parties no longer covered by the CIP shall obtain and maintain, and shall require each of their Subcontractors to obtain and maintain, the insurance coverage specified in 1.9 below.

1.4    CIP Insurance Policies Establish CIP Coverages.  The CIP Coverages and exclusions summarized in this Exhibit and the other Contract Documents are set forth in full in their respective insurance policy forms.  The summary descriptions of the CIP Coverages in this Exhibit or the CIP Manual are not intended to be complete or to alter or amend any provision of the actual CIP Coverages.  In the event any provision of this Exhibit, the CIP Manual, the Contract Documents, or the summary below conflicts with the CIP insurance policies, the provisions of the actual CIP insurance policies shall govern.

1.5    Summary of CIP Coverages.  CIP Coverages shall apply only to those operations of each Enrolled Party performed at the Jobsite in connection with the work and only to Enrolled Contractors that are eligible for the CIP, even if they are erroneously enrolled in the CIP.

The insurance provided under the CIP will not extend coverage for products liability to any insured party, vendor, supplier, material dealer, or others for any product manufactured, assembled, or otherwise worked upon away from the Jobsite.

The CIP shall provide only the following insurance to eligible and Enrolled Contractors:

| 1 | Workers Compensation Insurance | |
|---|---|---|
| | Statutory Limit | |
| | | |
| 2 | Employers Liability Insurance | |
| | Bodily Injury by Accident, each accident | $1,000,000 |
| | Bodily Injury by Disease, each employee | $1,000,000 |
| | Bodily Injury by Disease, policy limit | $1,000,000 |
| | | |
| 3 | Commercial General Liability Insurance | |
| | Each Occurrence Limit Reinstated Annually? | $2,000,000 |



CIP Exhibit "C"

| | | |
|---|---|---|
| | General Aggregate – Other Than Products/Completed Operations Reinstated Annually? | $4,000,000 |
| | Products and Completed Operations Aggregate Limit* | $4,000,000 |
| | *The Products and Completed Operations Aggregate is for the term of the policy period including the [3] year extended period and will be activated upon completion of the Project. | |
| | | |
| | Limits apply to all Enrolled Contractors. | |
| | | |
| | Defense is inside/outside of the limits. | |
| | | |
| | This insurance is primary for all bodily injury, property damage, or personal/advertising injury occurring on the Jobsite. | |
| 4 | Umbrella/Excess Liability Insurance | |
| | Each Occurrence Limit | $100,000,000 |
| | General Annual Aggregate | $100,000,000 |
| | Products and Completed Operations Aggregate Limit* | $100,000,000 |
| | | |
| | *The Products and Completed Operations Aggregate is for the term of the policy period including the [3] years extended period and will be activated upon completion of the Project. | |
| | | |
| | Limits apply to all Enrolled Contractors. | |

1.6     Construction Manager's Insurance Obligations.  Construction Manager shall pay the costs of premiums for the CIP Coverages.  Construction Manager will receive or pay, as the case may be, all adjustments to such costs, whether by way of dividends, retrospective adjustments, return premiums, other moneys due, audits, or otherwise.

Construction Manager reserves the right at its option, without obligation to do so, to furnish other insurance coverage of various types and limits provided that such coverage is not less than that specified in the Contract Documents.

1.7     Contractor and Subcontractor's CIP Obligations.  Contractor shall and cause its Subcontractors of Any Tier to:

Incorporate the terms of this Exhibit in all of its subcontracts, purchase orders and other agreements.



CIP Exhibit "C"

Provide each of its Subcontractors of Any Tier with a copy of the CIP Manual and assure that its Subcontractors of Any Tier comply with the provisions of CIP insurance policies, the CIP Manual, this Exhibit, and the Contract Documents. The failure of (a) Contractor or Subcontractor to include the CIP Manual or this Exhibit in the bid documents or (b) Contractor or Subcontractor to provide each of its eligible Subcontractors of Any Tier with a copy of same shall not relieve Contractor or its Subcontractors of Any Tier from any of the obligations contained herein.

Enroll in the CIP and maintain enrollment in the CIP by submitting the required information to the Construction Manager or CIP Administrator. In addition, the Contractor shall notify and cause its Subcontractors to notify Subcontractors of Any Tier of the procedure for enrolling in the CIP and shall ensure that Eligible Parties of any tier enroll in the CIP and maintain enrollment in the CIP. No work shall commence until all enrollment and insurance requirements set forth in the Contract Documents have been met.

Provide, within five (5) business days of Construction Manager's or the CIP Administrator's request, all documents or information as requested of Contractor or its Subcontractors of Any Tier. Such information may include but not be limited to, insurance rating and policy information, payroll records, certificates of insurance, safety records or history, OSHA citations, or such other data or information as Construction Manager, the CIP Administrator, or CIP Insurers may request in the administration of the CIP, or as required by the CIP Manual.

Acknowledge, and require all of its Subcontractors of Any Tier to acknowledge in writing, that Construction Manager and the CIP Administrator are not agents or guarantors of the insurance companies providing coverage under the CIP and that Construction Manager is not responsible for any claims or disputes between or among Construction Manager, its Subcontractors, and any CIP Insurer(s).

Any type of insurance coverage or limits of liability in addition to the CIP Coverages that Contractor or Subcontractor of any tier requires for its or their own protection, or that is required by applicable laws or regulations, shall be Contractor's or its Subcontractors of any tier's sole responsibility and expense and shall not be billed to Construction Manager.

Keep, maintain, and furnish on a monthly basis payroll records listed by Standard Workers Compensation classification as required by the CIP Manual.

Maintain separate payroll records in an acceptable form consistent with normal insurance practices at the nearest permanent office and available for physical audit, verification by or as required by the CIP insurer. If an Enrolled Subcontractor has more than one contract, records must be maintained separately for each contract.

Make available their books, vouchers, contracts, documents, and records, of any and all kinds, to the auditors of the CIP insurer or the CIP Administrator, upon request.



CIP Exhibit "C"

Cooperate fully with the Construction Manager, CIP Administrator, and the CIP Insurers, as applicable. in its or their administration of the CIP and at the request of Construction Manager or CIP Administrator shall attend meetings held in connection with the CIP.

Comply with all of the administrative. safety. insurance. and other requirements outlined in this Exhibit, the CIP Manual. the CIP insurance policies, or elsewhere in the Contract Documents.

Comply with and follow the claim reporting procedures established for the CIP. All claims must be immediately reported to the Contractor designee as described in the claim reporting procedures established for the CIP. The Contractor designee will report all CIP claims to the insurance company.

Assist and cooperate in every manner possible in connection with the reporting. investigation. and adjustment of all claims and demands which the Construction Manager's insurer(s) is/are called upon to adjust or defend against arising out of operations at the Jobsite. Upon request. Enrolled Contractors shall also cooperate with Construction Manager, the CIP Administrator and/or insurance company in the handling of any claim by securing and giving evidence. and obtaining the attendance of witnesses as required.

Not violate or knowingly permit to be violated any conditions of the policies of insurance provided by the Construction Manager under the terms of this contract and shall at all times satisfy the requirements and recommendations of the insurance companies issuing them. All requirements imposed by the policies referred to above and which are to be imposed upon. assumed and/or performed by the Contractor shall like wise be impose upon, assumed and/or performed by each of its Subcontractors of Any Tier.

1.8    Bidding, Credit Tracking. and Close-Out Calculations. The Contractor and Subcontractors shall include their insurance costs to provide all insurance coverages required by the Contract Documents if the CIP was not implemented in their bid price. Subcontractors shall also instruct their Subcontractors of Any Tier to include their insurance costs to provide all insurance coverages required by the Contract Documents if the CIP was not implemented in their bid price.

The Contractor and Subcontractors of Any Tier shall identify their insurance costs. including profit and overhead (Estimated CIP Insurance Cost), with its bid prices as a Deduct Alternate. The Deduct Alternate/Estimated CIP Insurance Cost will be verified by the Construction Manager or its CIP Administrator and removed from the bid price.

The Contractor and their Subcontractors of Any Tier are required to submit a completed Insurance Cost Calculation Worksheet with their bid, along with the required rate documentation, to enable the Construction Manager or its CIP Administrator to verify the Deduct Alternate/Estimated CIP Insurance Cost. The Estimated CIP Insurance cost identified as a Deduct Alternate on the bid form

CIP Exhibit "C"

must match the Estimated CIP Insurance cost shown on the Insurance Cost Calculation Worksheet.

The following items shall be submitted with the Insurance Cost Calculation Worksheet: Copy of the Workers Compensation policy page(s) that displays the applicable rate(s) for the work and the premium calculation. Copy of the General Liability policy rate page(s) that displays the applicable rate(s) for the work, Copy of the Umbrella/Excess Liability policy rate page(s) that displays the applicable rate(s) for the work or indicates that the policy is rated on a flat basis, and a copy of the current Experience Modification Worksheet.

A separate Insurance Cost Calculation Worksheet, along with the required documentation, is required for each Subcontractor of Any Tier eligible for enrollment. If a Subcontractor of Any Tier will utilize one or more Subcontractors of Any Tier to perform work at the Jobsite, the Subcontractor of Any Tier shall obtain an Insurance Cost Calculation Worksheet from each of its Subcontractors of Any Tier who will perform work. The Subcontractor of Any Tier must total all of the Estimated CIP Insurance Cost from the worksheet(s) received from its Subcontractor(s) and enter the total on its own Insurance Cost Calculation Worksheet where indicated.

If Subcontractor(s) cannot be identified at the time of bid, the Subcontractor of Any Tier shall provide their Estimate of the total amount of insurance cost that was included in its bid for their Subcontractor(s) on the Insurance Cost Calculation Worksheet where indicated.

Each Insurance Cost Calculation Worksheet shall identify the Total Estimated Payroll that was used to calculate the Estimated CIP Insurance Cost. A Payroll Rate will be calculated for each Enrolled Contractor for the purposes of tracking the Estimated CIP Insurance Cost and to perform a closeout calculation at the end of the work. The Payroll Rate is fixed for the duration of the Project. The Payroll Rate is determined by dividing the total Estimated CIP Insurance Cost by the Enrolled Contractor's Total Estimated Payroll for the work performed. Computation Example:

| Total Est. Payroll | ÷ | Est. CIP Ins. Cost | = | Payroll Rate |
|---|---|---|---|---|
| $500,000 | | $100,000 | | .2000 |
| Divide the Total Estimated Payroll by the Estimated CIP Insurance Cost (from the Insurance Cost Calculation Worksheet) to compute the Payroll Rate. | | | | |

Each enrolled Contractor shall submit payroll reports, on a form provided by the CIP Administrator, on a monthly basis for the payroll expended to perform work for the Project. The total of all payrolls expended for work performed at the Project shall be the Final Reported Payroll. The Insurance Company, at its discretion or at the discretion of the Construction Manager or CIP Administrator, may perform an audit of the Final Reported Payroll. The payroll identified by the Insurance Company shall be the Final Audited Payroll. The Payroll Rate will be



CIP Exhibit "C"

"Change Order Estimated CIP Insurance Cost" is defined as the insurance cost, including profit and overhead, to provide the insurance required by the Contract Documents that was removed from the Change Order quotation.

"CIP Change Order Worksheet" is defined as the worksheet, provided by the CIP Administrator, that is required to be completed and submitted by each Enrolled Contractor for each Change Order to calculate its Change Order Estimated CIP Insurance Cost for the work, including profit and overhead, to provide the insurance required by the Contract documents if the CIP were not implemented.

"Total Estimated CIP Insurance Cost" is defined as the Estimated CIP Insurance Cost plus the Total of all Change Order Estimated CIP Insurance Cost.

"Final Reported Payroll" is defined as the total of all expended payroll work performed at the Jobsite, for each contract.

"Final Audited Payroll" is defined as the total of all expended payroll for work performed at the Jobsite, for each contract, and verified by an Insurance Company auditor at the sole discretion of the Construction Manager or Insurance Company.

"Final CIP Insurance Cost" is defined as the amount calculated by multiplying the Payroll Rate by the Final Reported Payroll or Final Audited Payroll, if applicable.

"Final CIP Insurance Adjustment" is defined as the "Final CIP Insurance Cost" minus the "Initial Estimated CIP Insurance Cost."

1.9    Additional Insurance Required from Enrolled Contractors and Excluded Parties. Contractor shall obtain and maintain, and shall require each of its Subcontractors of Any Tier to obtain and maintain, the insurance coverage specified in this Section 1.9 in a form and from insurance companies acceptable to Construction Manager. The insurance limits may be provided through a combination of primary and excess policies, including the umbrella form of policy.

Also to Eligible Parties and Enrolled Contractors, the workers compensation, employers liability, and commercial general liability insurance required by this Section shall only be for off-site activities or operations not insured under the CIP Coverages.

1.9.1    Each policy required under this Section, except Workers Compensation and Employers Liability, shall be endorsed to name the following parties and any additional entities as Owner may request as additional insureds:

[Owner, Construction Manager, Contractor, if provided by a Subcontractor, the CIP Administrator, their respective officers, agents, and employees]

Coverage provided to the additional insured shall be primary and any other insurance available to the additional insureds shall be excess and noncontributory. If the Contractors' policies do not apply on this basis, appropriate modifications will be made to comply with this provision.



CIP Exhibit "C"

1.9.2    Statutory Workers Compensation Insurance and Employers Liability insurance with Statutory limits as required by law, including Maritime coverage, if appropriate.

1.9.3    Commercial General Liability Insurance in a form providing coverage not less than the standard ISO Commercial General Liability insurance policy ("Occurrence Form"), including products and completed operations coverage and broad form contractual liability coverage.

1.9.4    Standard Commercial Automobile Liability Insurance covering all owned, non-owned, and hired automobiles, trucks, and trailers. If transporting hazardous waste/materials from the Site, the MCS-90 Endorsement must be attached and supplied to Construction Manager on a primary basis with [$1,000,000] limits of liability.

1.9.5    Umbrella/Excess Liability Insurance.

1.9.6    All other insurance required by Contract Documents that is not provided under the CIP including but not limited to, Contractor's Equipment Floater, Pollution Liability Insurance, or Aviation and/or Watercraft Liability Insurance.

1.9.7    Any insurance limits required by the Contract Documents are minimum limits only and are not intended to restrict, relieve, or limit the liability or obligation imposed by the Contract Documents, CIP insurance policies, or by law, including without limitation any indemnification obligations, which Contractor or any of its Subcontractors of Any Tier has to the Construction Manager for work performed under the contract.

1.9.8    Required Limits:

| (1) | Workers Compensation Insurance | |
| | Statutory Limit | |
| | | |
| (2) | Employers Liability Insurance | |
| | Bodily Injury by Accident, each accident | $1,000,000 |
| | Bodily Injury by Disease, each employee | $1,000,000 |
| | Bodily Injury by Disease, policy limit | $1,000,000 |
| | | |
| (3) | Commercial General Liability Insurance | |
| | Each Occurrence Limit | $1,000,000 |
| | General Aggregate – Other Than Products/Completed Operations | $1,000,000 |
| | Products and Completed Operations Aggregate | $1,000,000 |
| | Personal/Advertising Injury | $1,000,000 |
| | Fire Damage | $50,000 |
| | Medical Payments | $5,000 |
| | | |

(MM)

CIP Exhibit "C"

| (4) | Automobile Liability | |
|---|---|---|
| | Combined Single Limit | $1,000,000 |
| | | |
| (5) | Umbrella/Excess Liability Insurance | |
| | Each Occurrence Limit | $5,000,000 |
| | | |
| | General Annual Aggregate | $5,000,000 |
| | Products & Completed Operations Aggregate | $5,000,000 |
| | Limit | |

1.10 Eligible Parties Representations and Warranties to Construction Manager.

Eligible Parties represent and warrant to Construction Manager:

That their bid price, including change orders after the deduction for insurance, if any and the bid prices, including change orders, if any, of their Subcontractors of Any Tier after the deduction for insurance excludes any and all costs for insurance, including profit and overhead, provided by the CIP. Any falsification of any of the information furnished will be considered fraud and subject to penalty of law;

That all information it submits to Construction Manager, CIP Program Manager, or CIP Administrator shall be accurate and complete;

That they have the opportunity to read and analyze copies of the CIP insurance policies and that they understand the CIP Coverages. Any reference or summary in the Contract, this Exhibit, the CIP Manual, or elsewhere in any other Contract Document as to amount, nature, type, or extent of CIP Coverages and/or potential applicability to any potential claim or loss is for reference only. Contractor and its Subcontractors of Any Tier have not relied upon said reference but solely upon their own independent review and analysis of the CIP Coverages in formulating any understanding and/or belief as to amount, nature, type, or extent of any CIP Coverages and/or its potential applicability to any potential claim or loss.

1.11 Assignment of Premiums. All premiums, deductibles, or retentions for insurance provided by the CIP are the responsibility of the Construction Manager. Enrolled Contractors must exclude the cost of insurance provided by the CIP from their bids and Change Orders, if applicable. Each Enrolled Contractor through the enrollment process acknowledges its assignment of its cancellation rights, rights to all return premiums, premium discounts, adjustments, and dividends of insurance procured under the CIP to the Construction Manager.



CIP Exhibit "C"

defense counsel and experts to defend all such insureds. To the fullest extent permitted by law. Contractor waives, and will require in writing that each of its Subcontractors of Any Tier waive, any right they may have to select counsel to defend them from such claim, suit or proceeding. These waivers are deemed to be continuing. Nothing in this paragraph will preclude the Subcontractor from hiring its own defense counsel, at its own expense.

